

FILED
GREAT FALLS DIV.

'06 AUG 3 AM 10 41

PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

CHARLES R. STOWE,
                    Plaintiff,

          vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.

CAUSE NO. CV 05-145-M-CSO

FINDINGS AND RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

Plaintiff Charles S. Stowe (Stowe) instituted this action to obtain judicial review of the decision of Defendant Commissioner of Social Security (Commissioner), denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433, and for supplemental security income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c.

The Commissioner has moved for summary judgment, and the issues are fully briefed.[1]  Having considered the issues presented by the parties, together with the administrative

---

[1] Claimant did not file a reply brief.

PAGE 1

record, the Court recommends affirming the Commissioner's decision denying DIB and SSI, and granting the Commissioner's motion for summary judgment.

## I.   PROCEDURAL BACKGROUND

Stowe brings this action challenging the Commissioner's decision denying his application for benefits.  He filed benefit applications alleging a disability onset date of December 12, 2002.  Tr. 43, 60, 196.   Stowe contends that he is disabled due to polycystic kidney, liver, and pancreas disease, diabetes type II, and hypertension.  Tr. 60.

After an administrative hearing held on April 8, 2005, at which Stowe appeared with counsel, an Administrative Law Judge (ALJ) found that Stowe was not disabled within the meaning of the Act.  Tr. 12-20; 204-36.  The Appeals Council later denied Stowe's request for review, rendering the ALJ's decision the agency's final decision for purposes of judicial review.  Tr. 5-7.  Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

PAGE 2

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

### III. BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only

PAGE 3

unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. Id.

2.  If not so engaged, the claimant must next show that he or she has a severe impairment.  Id.

3.  The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4.  If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. Corrao, 20 F.3d at 946.

5.  Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity. Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. Corrao, 20 F.3d at 946.

PAGE 4

## IV. DISCUSSION

Following the steps in the sequential evaluation process, the ALJ first found that Stowe had not engaged in substantial gainful activity since December 12, 2002, the alleged disability onset date. Tr. 19. The ALJ next found that Stowe suffered from polycystic disease of the kidneys, liver, and spleen, which constituted a severe impairment. *Id.* However, the ALJ found that Stowe's polycystic disease did not meet or equal the severity of any impairment described in the Listing of Impairments. The ALJ then found that "[t]he claimant's allegations of disability [were] not fully credible." *Id.* The ALJ next determined that Stowe retained the residual functional capacity to perform a limited range of light work, and was therefore unable to perform his past relevant work as a truck driver, mechanic, or construction laborer. Tr. 18, 19. Using Medical-Vocational Rule 202.21 as a framework for decision-making, the ALJ concluded that there were a significant number of jobs in the national economy that he could perform, including work as a bench assembler, food and beverage order clerk, parking lot attendant, and document preparer. Tr. 20.

Stowe argues on appeal that the ALJ failed to cite sufficient reasons for rejecting the opinion of his treating physician and for finding his testimony not entirely credible. The Commissioner argues otherwise, and maintains that substantial

evidence supports the ALJ's decision that Stowe was not disabled within the meaning of the Act because he retained the residual functional capacity to perform a limited range of light work.

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the decision is based on legal error.  For the reasons set forth below, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

## A.  Treating Physician

Stowe maintains the ALJ failed to cite sufficient reasons for rejecting various opinions expressed by his treating physician, Dr. William Stewart.  Pl.'s Opening Br. at 6 (Nov. 28, 2005).

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the records.  20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard the treating physician's

PAGE 6

opinion whether or not that opinion is contradicted. <u>Magallanes</u>,
881 F.2d at 751.  In discounting the controverted opinion of a
treating physician the ALJ must provide "'specific and legitimate
reasons' supported by substantial evidence in the record."
<u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998) (quoting
<u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)).  To do so
the ALJ must set forth "a detailed and thorough summary of the
facts and conflicting clinical evidence, stating his
interpretation thereof, and making findings."  <u>Magallanes</u>, 881
F.2d at 751.  If the treating physician's opinion is contradicted
by a nontreating physician, and the nontreating physician's
opinion is not based on independent clinical findings, or is
based on the same information utilized by the treating physician,
the ALJ may only reject the treating physician's opinion if the
ALJ gives specific, legitimate reasons for doing so and those
reasons are supported by substantial evidence in the record.
<u>Andrews</u>, 53 F.3d at 1041.

    The ALJ may only reject the uncontradicted opinion of a
treating physician when the ALJ presents clear and convincing
reasons that are supported by substantial evidence in the record.
<u>Reddick</u>, 157 F.3d at 725 (quoting <u>Lester</u>, 81 F.3d at 830);
<u>Andrews</u>, 53 F.3d at 1041; <u>Magallanes</u>, 881 F.2d at 751.  A medical
opinion is considered uncontroverted if all the underlying
medical findings of claimant's physical impairments in  the

PAGE 7

record are similar.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th
Cir. 1987).

Here, Stowe argues the ALJ failed to give sufficient weight
to a Medical Source Statement of Ability to Do Work Related
Activities form completed by Dr. Stewart, in which he indicated
that Stowe was restricted to lifting between 10-20 pounds on an
occasional basis only.  Tr. 191.  Stowe argues the ALJ failed to
cite sufficient reasons for rejecting Dr. Stewart's assessment
and instead finding that he retained the residual functional
capacity to "lift and carry 20 to 50 pounds occasionally and 10
pounds frequently."  Tr. 17.

The ALJ discussed this form in his written decision, but
found that Dr. Stewart's assessment was "inconsistent with the
medical and other evidence in the record; including the
claimant's own testimony."  Tr. 16.  Stowe testified that he had
not tried lifting anything over 50 pounds, but agreed that he
might be able to lift more than 10 to 20 pounds.  Tr. 219.  The
ALJ properly rejected Dr. Stewart's statement that Stowe was
limited to lifting 10-20 pounds occasionally in part based on
Stowe's testimony that he felt capable of doing more.  The ALJ
also noted that Dr. Stewart's opinions regarding Stowe's
limitations were not adequately explained or supported by his
treatment records and that Dr. Stewart had submitted no recent
medical records or testing from which he based his determination

PAGE 8

of Stowe's functional limitations.  In addition, reviewing physician Dr. William Wise indicated in May 2003 that Stowe could perform medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  Tr. 132-139.  The ALJ properly considered that evidence, when assessing Stowe's abilities and finding that he was capable of performing the less demanding requirements of a limited range of light work, which "involves lifting no more than 20 pounds at a time, with frequently lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

Stowe also argues very briefly that the ALJ failed to cite sufficient reasons for rejecting a letter Dr. Stewart wrote to his attorney in March 2005.  Pl.'s Opening Br. at 10.  Dr. Stewart stated in that letter that he was "of the sincere opinion that with his renal, liver, and pancreatic status and the congenital nature of his disease" Stowe was "unemployable and should get all benefits due him."  Tr. 190.

The ALJ rejected Dr. Stewart's letter primarily on the basis that it was not supported by his contemporaneous treatment notes and objective findings.  Tr. 16.  Dr. Stewart's records indeed indicate that although Claimant was suffering from a degenerative condition, he was doing rather well during the relevant time period.  For example, Dr. Stewart wrote in November 2002,

PAGE 9

following the surgical insertion of a ureter stent, that Claimant
would be able to return to work as he was asymptomatic.  Tr. 154.
Claimant apparently experienced acute pain after the stent was
removed for a trial period in January 2003, but Dr. Stewart
reported after replacing the stent that Claimant was tolerating
it satisfactorily and noted in December 2003 that he had been
"overall doing well" and that his renal function had been stable.
Tr. 115-17, 149, 185.  These contemporaneous records do indeed
conflict with Dr. Stewart's retrospective letter opinion that
Claimant was so physically limited that he was unemployable.
The ALJ properly cited that conflict as a basis for rejecting Dr.
Stewart's letter opinion.  The ALJ also noted that Stowe did not
see any physician, including Dr. Stewart, regularly.  Moreover,
as the ALJ noted, Dr. Stewart's opinion that Stowe was
"unemployable" relates to the ultimate determination of
disability, which is an issue reserved to the Commissioner.  See
Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)
(stating that a treating physician's opinion "is not binding on
an ALJ with respect to the existence of an impairment or the
ultimate determination of disability"); 20 C.F.R. § 404.1527(e).
For these reasons, this Court concludes that the ALJ cited
sufficient reasons for rejecting Dr. Stewart's assessment.

**B.  Stowe's Testimony**

Stowe argues the ALJ failed to cite sufficiently clear and

PAGE 10

convincing reasons for rejecting his testimony as to the extent of his limitations, including his need to lie down frequently throughout the day. Pl.'s Opening Br. 7 (Nov. 28, 2005).

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the Cotton test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). The Cotton test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. Smolen, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the Cotton test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. Smolen, 80 F.3d at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. Smolen, 80 F.3d at 1284. However, "[g]eneral

PAGE 11

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (<u>quoting</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)).

In assessing credibility the ALJ must also consider the factors set forth in SSR 96-7p including:

1.  The individual's daily activities;

2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; <u>See also</u> 20 C.F.R. § 404.1529©.

Here, the ALJ found that Stowe suffers from polycystic disease of the kidneys, liver, and spleen, which constitutes a severe impairment.  Tr. 19.  The medical records clearly support the ALJ's finding in this regard.  The medical records also

establish that the disease from which Stowe suffers can reasonably be expected to produce some degree of symptom. Tr. 98-188. It is thus apparent that Stowe has made a showing sufficient to meet both prongs of the *Cotton* test.

At his hearing before the ALJ, Stowe testified as to the severity of his symptoms, including the fatigue he experiences as a result of his condition. Tr. 218. Stowe explained that he deals with his fatigue by sitting in a recliner or lying down for a nap once or twice a day, for one to two hours at a time. Tr. 218.

The ALJ acknowledged Stowe's testimony in this regard, but discounted it for several reasons. Tr. 15. First, he cited Stowe's failure to seek more frequent medical treatment as a basis for discrediting his testimony as to the extent of his limitations. Tr. 16-17. It is indeed evident from the record that Stowe saw his physicians on an infrequent basis and, despite the fact that he has sought very little medical care for any of his conditions and has not been compliant with treatment efforts, he has continued to do quite well. Tr. at 16. The ALJ properly cited Stowe's lack of more frequent medical care as a reason for rejecting his credibility as to the extent of his limitations.

The ALJ also found the fact that Stowe engaged in a number of other daily activities to be "inconsistent with his allegations of total disability." Tr. 17. As the ALJ noted,

PAGE 13

Stowe "testified that he lives alone and performs activities of
daily living including household chores, mopping, scrubbing,
sweeping, cooking, dishes, laundry, vacuuming, and shopping."
Tr. 17.  The ALJ observed that Stowe's other activities included
gardening, reading, walking the dog, "puttering around" outside,
doing some yard work, driving, watching television and using the
internet.  Tr. 17.  The ALJ properly found the fact that Stowe
engaged in these daily activities undermined his allegations of
total disability.  See Rollins v. Massanari, 261 F.3d 853, 857
(9th Cir. 2001) (finding that claimant's level of activities
undermined her subjective complaints of pain).

     Finally, the ALJ cited Stowe's failure to follow certain
treatment recommendation and make lifestyle changes, which could
have helped him to control his diabetes and hypertension.  Tr.
16.  As the ALJ noted, Stowe admitted to his doctor in March
2002, that he was "really not checking [his blood sugar] at all."
Tr. 129, 16.  Moreover, as the ALJ also observed, treating
physician Dr. Palmieri wrote in February 2003 that Stowe "had a
long history of poor control of his non-insulin dependent
diabetes" and admitted "to eating donuts and some candy during
the day."  Tr. 17.  The ALJ properly considered evidence of
Stowe's failure to comply with his doctor's treatment
recommendations when discrediting his allegations of disability.
See, Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)

PAGE 14

(recognizing that an ALJ may consider a claimant's failure to follow recommended treatment when assessing the claimant's credibility).

This Court also notes that the ALJ also found that Stowe's testimony was undermined by his failure to seek other employment. Tr. 15. Specifically, the ALJ found that while Stowe alleged he was unable to perform his past work as a truck driver, he had "not looked for lighter work that would accommodate his alleged limitations" and discredited his testimony in part on that basis. Tr. 15. Interestingly, however, the ALJ also discredited Stowe based on the seemingly contradictory observation that he did in fact look for work. Tr. 17. In the context of discussing evidence of Stowe's daily activities, the ALJ observed that his activities on a typical day included "filling out job applications" and "checking with Job Services." Tr. 17.

It was improper for the ALJ to fault Stowe for failing to seek lighter work, and then later give weight to Stowe's claim that he did look for other work. Any error on the ALJ's part in doing so, however, was harmless. As discussed above, the ALJ also rejected Stowe's testimony regarding the extent of his limitations based on evidence of his daily activities, failure to seek frequent medical care, and failure to follow recommended treatment. These constitute clear and convincing reasons for finding Stowe's testimony not entirely credible.

PAGE 15

## V. CONCLUSION

Based on the foregoing, the Court finds that substantial evidence exists in the record to support the ALJ's decision, which is free of legal error.  Therefore,

**IT IS RECOMMENDED** that the Commissioner's Motion for Summary Judgment be **GRANTED** and the Commissioner's decision be **AFFIRMED.**

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 3rd day of August, 2006

Carolyn S. Ostby
United States Magistrate Judge

PAGE 16